Filed 1/13/26  P. v. Jones CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>　　　　v.<br><br>KENDALL LEON JONES,<br><br>　　Defendant and Appellant. | G064545<br><br>(Super. Ct. No. RIF1605644)<br><br>O P I N I O N |

Appeal from a postjudgment order of the Superior Court of Riverside County, John D. Molloy, Judge. Conditionally affirmed and remanded with directions.

Arielle Bases, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Arlene A. Sevidal, James H. Toohey, and Andrew Mestman, Deputy Attorneys General, for Plaintiff and Respondent.

In 2018, Kendall Leon Jones pleaded guilty to the first degree murder of Christopher Taylor and a firearm enhancement under Penal Code section 12022.53, subdivision (d).[1] With respect to the enhancement, Jones admitted he "personally and intentionally discharged a firearm and proximately caused great bodily injury and death to another person, who is not an accomplice, within the meaning of . . . sections 12022.53[, subdivision (d)] and 1192.7[, subdivision (c)(8)]." In 2024, the trial court denied Jones's petition for resentencing under section 1172.6 at the prima facie stage.[2] Jones appeals from the denial of his petition.

We conclude Jones has not, at this juncture, made a prima facie case for relief under section 1172.6 in light of the record of conviction. Jones, however, has requested that we remand the matter if we conclude he has not established a prima facie case, so that he may file an amended petition. Out of an abundance of caution, we remand the matter to the trial court "with directions for that court to consider an amended petition should [Jones], within 30 days of that remand, seek to file one." (*People v. Patton* (2025) 17 Cal.5th 549, 569–570 (*Patton*).) We otherwise conditionally affirm the order denying Jones's petition under section 1172.6.

---

[1] All further statutory references are to the Penal Code.

[2] Jones's petition referenced former section 1170.95. "Effective June 30, 2022, . . . section 1170.95 was renumbered section 1172.6, with no change in text. (Stats. 2022, ch. 58, § 10.)" (*People v. Saavedra* (2023) 96 Cal.App.5th 444, 446, fn. 1.) This opinion generally refers to the current numbering, section 1172.6.

# FACTUAL AND PROCEDURAL BACKGROUND

## I.

### THE INFORMATION

In a September 2017 information, Jones was charged with murder under section 187, subdivision (a) (count 1) and possessing a firearm in violation of section 29800 (count 2). Specifically, count 1 alleged Jones violated section 187, subdivision (a), "a felony, in that on or about [April 5, 2016], in the County of Riverside, State of California, the defendant did willfully and unlawfully murder Christopher T., a human being." (Some capitalizations omitted.) As to count 1, the information further alleged, in the commission and attempted commission of the murder, Jones "personally and intentionally discharged a firearm and proximately caused great bodily injury and death to another person, not an accomplice, within the meaning of . . . sections 12022.53, subdivision (d) and 1192.7, subdivision (c), subsection (8)." The information also alleged certain prior offenses and strike priors.

## II.

### THE PRELIMINARY HEARING

At the preliminary hearing, an investigator with the Riverside County Sheriff's Department testified to the following regarding interviews he had conducted with J.M, M.P. (who is Jones's brother), and D.P.

During J.M.'s interview, J.M. stated he was in bed at his apartment when he heard a single gunshot from the alley behind the apartment. He immediately got out of his bed and looked out his window at the alley, where he saw his neighbor, M.P., standing only a few feet from the victim as the victim was falling to the ground. Only a few seconds passed from the time J.M. heard the gunshot to when he looked out the window. J.M.

could not see if M.P. had a gun in his hands. But he saw M.P. run toward the front of the apartment complex and climb the stairs to his (M.P.'s) apartment. As J.M. was exiting his apartment to check on the victim, he saw M.P. exit M.P.'s apartment with two other men and get into a vehicle. Several minutes later, M.P. walked back to his apartment with a group of individuals.

During M.P.'s first interview, he said he was in his apartment with friends when he heard a gunshot from the alley behind the apartment. M.P. went outside with his friends but did not get close to the person who was lying on the ground in the alley. Although M.P. saw J.M. with a gun, he did not know who shot the victim.

In a second interview with the investigator, however, M.P. admitted he had lied earlier. M.P. stated he was in his bedroom at the time of the gunshot, but as he was walking out of his apartment, he saw Jones coming up the stairs.[3] M.P. later encountered Jones in the alley several apartment buildings away, at which time Jones said the victim "'swung on him.'" Jones also said, "'I ducked, and I hit him with one.'" M.P. said he did not see Jones with a gun the night of the shooting, but that Jones did have a gun. M.P. stated he heard only one gunshot.

During D.P.'s interview with the investigator, D.P. said she was a neighbor of J.M. and M.P. She was walking in the alley back to her apartment when she encountered Taylor, who she knew. D.P. thought Taylor wanted to smoke marijuana with her, and she told him to wait by the fence surrounding the apartment building while she went to her apartment to use the restroom. As D.P. was climbing the stairs to her apartment, she

---

[3] M.P. noted, when he went outside, there were other people also on the stairs.

4

encountered Jones. D.P. continued toward her apartment but overheard Jones and Taylor arguing. After using the restroom, D.P. walked away from the apartment building and noticed Taylor was no longer there. After someone informed her something had happened in the alley, she returned to the alley and saw Taylor lying on the ground.

In addition to recounting the substance of these interviews, the investigator testified about a conversation he had with a police officer who was the first officer on the scene. The officer said that, when he arrived, the victim was unconscious and appeared to have "a gunshot wound or a wound similar to a gunshot wound to his chest."

### III.

### THE GUILTY PLEA AND SENTENCING

In March 2018, Jones pleaded guilty to count 1 and the firearm enhancement under section 12022.53, subdivision (d). In the signed plea form, Jones stated he will plead guilty to "Count 1: 187(a)PC first degree; 12022.53(d)PC" for a term of 50 years to life. At the plea hearing, the trial court asked: "Is it true that on or about April 5th, 2016, in the county of Riverside, state of California, you did willfully and unlawfully murder Christopher T., a human being?" Jones responded, "Yes." The court further asked: "Is it also true that during the commission of that offense you personally and intentionally discharged a firearm and proximately caused great bodily injury and death to another person, who is not an accomplice, within the meaning of . . . sections 12022.53[, subdivision (d)] and 1192.7[, subdivision (c)(8)]?" Jones responded, "That's correct."

The trial court sentenced Jones to 50 years to life imprisonment, consisting of 25 years to life for count 1 and 25 years to life on the

5

enhancement pursuant to section 12022.53, subdivision (d), to run consecutively.

## IV.

### THE SECTION 1172.6 PETITION

In August 2022, Jones filed a petition for resentencing, which was a form with checkbox allegations and a request for appointment of counsel.[4] In November 2022, Jones's appointed counsel filed a brief in support of his petition, asserting Jones had made a prima facie showing.

In May 2024,[5] the prosecution filed what it called the "People's request for judicial notice of materials re latent defects in Penal Code [section] 1172.6 petition for resentencing." (Some capitalizations omitted.) The prosecution requested judicial notice of the information, the change of

---

[4] In addition to requesting counsel and asserting he mailed a copy of the petition to the district attorney and public defender, Jones's petition checked boxes asserting the following: (1) "A complaint, information, or indictment was filed against me that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, or attempted murder under the natural and probable consequences doctrine. [Citation.]"; (2) "I was convicted of murder, attempted murder, or manslaughter following a trial or I accepted a plea offer in lieu of a trial at which I could have been convicted of murder or attempted murder. [Citation.]"; and (3) "I could not presently be convicted of murder or attempted murder because of changes made to [sections] 188 and 189, effective January 1, 2019. [Citation.]"

[5] A February 17, 2023 minute order indicates a status conference was conducted that day, at which "Counsel stipulate: Issuance of OSC" and a "Hearing re Order to Show Cause Why Defendant Should Not be Resentenced" was set for April 14, 2023. An April 14, 2023 minute order indicates the court granted a stipulated motion to continue. Based on the record on appeal, it appears additional stipulated motions to continue were granted.

6

plea form, the transcript of the plea hearing, and all other files and records for this case.

In May 2024, Jones filed a reply, arguing his "guilty plea and the 'record of conviction' fail to conclusively show that he harbored the requisite malice to support a murder charge pursuant to [s]ection 1172.6." Among other things, Jones contended he pleaded guilty to a generic murder charge and "made no admissions that the murder was with 'premeditation and deliberation' or with 'malice aforethought.'"

In July 2024, Jones filed a supplemental reply, asserting it would be improper to deny his petition based on the preliminary hearing without conducting an evidentiary hearing.[6] Jones noted he had not stipulated that the preliminary hearing transcript was a factual basis for his guilty plea, and he argued the trial court would be engaging in impermissible factfinding and weighing of the evidence if it were to find he had not made a prima facie showing based on the preliminary hearing transcript.

On July 5, 2024, the trial court denied the petition at the prima facie stage, finding Jones ineligible for relief.[7] The court focused on the language of the plea to the firearm enhancement. The court noted there is "an actual death being admitted to caused by the discharge of a firearm." The court recognized the stated factual basis for the plea was "di minimus," but it

---

[6] At a June 27, 2024 hearing, the prosecutor had requested a continuance to review the preliminary hearing transcript, which the trial court granted.

[7] As noted above, the trial court previously had issued an order to show cause. On appeal, Jones has not argued the court procedurally erred by issuing an order to show cause earlier in the proceedings but then denying his petition at the prima facie stage.

7

found the defendant ineligible for relief "because he does admit causing the death by the discharge of the firearm."[8]

DISCUSSION

"In 2018, the Legislature enacted Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437), to 'modify accomplice liability for murder and the felony-murder rule.' [Citation.] To do this, it 'eliminated natural and probable consequences liability for murder as it applies to aiding and abetting, and limited the scope of the felony-murder rule.' [Citation.] The purpose of the changes was 'to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.'" (*People v. Mares* (2024) 99 Cal.App.5th 1158, 1164 (*Mares*).) "Section 1172.6 is the new law's procedure allowing people convicted of murder under the old law to petition for an order vacating their convictions and resentencing them on remaining counts if they could not now be convicted because of the changes made to sections 188 and 189 by Senate Bill 1437." (*Id.* at p. 1165.)

Under section 1172.6, "[a] person convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime . . . may file a petition with the court that sentenced the petitioner to have the petitioner's murder . . . conviction vacated and to be resentenced on any remaining counts when all of the

_____

[8] At the hearing, Jones's counsel asserted it is possible Jones's enhancement under section 12022.53, subdivision (d) could have involved shooting a different person than Taylor. The trial court rejected this argument, and Jones has not renewed it on appeal.

following conditions apply: [¶] (1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime . . . . [¶] (2) The petitioner was convicted of murder, attempted murder, or manslaughter following a trial or accepted a plea offer in lieu of a trial at which the petitioner could have been convicted of murder or attempted murder. [¶] (3) The petitioner could not presently be convicted of murder or attempted murder because of changes to [s]ection 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (a).) If the petitioner has filed a facially valid petition and made a prima facie case for relief, then the matter "proceeds to an evidentiary hearing on the ultimate question of whether petitioner should be resentenced. If a petitioner who files a facially valid petition fails, at the second step, to make a prima facie showing, then the court denies the petition and provides no relief." (*Patton, supra*, 17 Cal.5th at p. 562.)

Regarding the prima facie stage, our Supreme Court has "stated ""the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if [those] factual allegations were proved. If so, the court must issue an order to show cause."' [Citation.] "[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing." [Citation.] "However, if the record, including the court's own documents, 'contain[s] facts refuting the allegations made in the petition,' then 'the court is justified in making a credibility determination adverse to the petitioner.""" (*Patton, supra*, 17 Cal.5th at p. 563.) Our Supreme Court has "cautioned that '[i]n reviewing any part of the record of

9

conviction at this preliminary juncture, a trial court should not engage in "factfinding involving the weighing of evidence or the exercise of discretion.""" (*Ibid*.) We review the denial of a petition at the prima facie stage de novo. (*People v. Saavedra, supra*, 96 Cal.App.5th at p. 447.)

In *Patton*, our Supreme Court held "that a petitioner who offers only conclusory allegations of entitlement to relief under section 1172.6, in response to a record of conviction that demonstrates the petitioner's conviction was under a still-valid theory, has not, thereby, made a prima facie showing." (*Patton, supra*, 17 Cal.5th at p. 557.)[9] As the Court explained, "petitioners confronting a record of conviction that demonstrates relief is unavailable have the burden of coming forward with nonconclusory allegations to alert the prosecution and the court to what issues an evidentiary hearing would entail." (*Id*. at p. 567.) *Patton* further clarified that the preliminary hearing transcript preceding a guilty plea is part of the record of conviction that may be consulted at the prima facie stage. (*Id*. at pp. 564, 568–569.)[10]

---

[9] The California Supreme Court decided *Patton* after the parties filed their appellate briefs. At our invitation, the parties filed supplemental letter briefs addressing the effect of *Patton* on this appeal.

[10] We note *Patton* did not decide whether testimony admitted at the preliminary hearing under Proposition 115 may be relied on at the prima facie stage. (See *Patton, supra*, 17 Cal.5th at p. 557, fn. 2.) (Proposition 115, codified at section 872, subdivision (b), permits a probable cause finding to be based on sworn testimony by a qualified law enforcement officer that relates statements of declarants made out of court and offered for their truth.) On appeal, neither party has argued such testimony cannot be considered; indeed, on appeal, both parties have relied on the investigator's testimony at the preliminary hearing about his witness interviews. Thus, we consider such testimony from the preliminary hearing on this appeal.

Additionally, "[w]hen, as here, 'the petitioner's conviction resulted from a guilty plea rather than a trial, the record of conviction includes the facts "the defendant admitted as the factual basis for a guilty plea."' [Citations.] It also includes the petitioner's 'express admissions at the plea colloquy.'" (*People v. Glass* (2025) 110 Cal.App.5th 922, 927.)

Here, Jones's appeal is unavailing in the face of the record of conviction. Notably, Jones admitted that, during the commission of the murder, he "personally and intentionally discharged a firearm and proximately caused great bodily injury and death to another person, who is not an accomplice, within the meaning of . . . sections 12022.53[, subdivision (d)] and 1192.7[, subdivision (c)(8)]." Moreover, the preliminary hearing transcript indicates there was only one gunshot fired and one victim. Thus, the record of conviction currently indicates Jones was the actual killer.[11] "Resentencing relief under section 1172.6," however, "is not available to an 'actual killer.'" (*People v. Garcia* (2022) 82 Cal.App.5th 956, 973.) Jones is therefore not eligible for relief under section 1172.6. (See *Mares, supra*, 99 Cal.App.5th at p. 1165 ["[the defendant's] conclusory assertion that he could not be convicted today 'because of' the 2019 changes to sections 188 and 189 is refuted by uncontradicted facts in the record"]; *People v. Fisher* (2023) 95 Cal.App.5th 1022, 1029 [stating the defendant could not have been convicted under the natural and probable consequences doctrine because he admitted he was the direct perpetrator and, "[a]lthough [the defendant] could have been convicted under a felony-murder theory of murder, malice is still not a

[11] Jones has not asserted that he fired a gunshot that proximately caused Taylor's death under section 12022.53, subdivision (d), but that it was actually a second gunshot fired by someone else that killed Taylor.

11

required element for actual killers under the exception in section 189, subdivision (e)(1)"].)

Jones asserts the record does not conclusively establish he was the sole perpetrator and "evidence from the preliminary hearing suggests multiple perpetrators may have been involved, undermining the argument that Jones was the actual killer or direct perpetrator." Jones argues that, unlike *Patton*, "the record here contains a material fact dispute regarding whether Jones was the actual killer or direct perpetrator." Jones points to the preliminary hearing testimony by the investigator that J.M. said he saw M.P. standing over the victim while the victim was falling to the ground and later saw M.P. leave the apartment with two men, and that M.P. told the investigator M.P. saw J.M. with a gun. Thus, Jones argues J.M., M.P, "or those other two males could have been the shooter—as opposed to Jones," and this is a factual dispute that cannot be resolved at the prima facie stage.

Our Supreme Court has noted "[a] dispute regarding the basis of a conviction might arise if, for instance, a petitioner points to specific facts that identify someone else as the direct perpetrator." (*Patton, supra*, 17 Cal.5th at p. 567; see also *Mares, supra*, 99 Cal.App.5th at p. 1173 ["If a defendant who faced a murder charge before Senate Bill 1437 pled guilty and the record contains any indication he had an accomplice who may have been the killer, a prima facie case ordinarily would be readily established, even by conclusory assertions in a form petition"].) The testimony from the preliminary hearing here, however, does not aid Jones because he *admitted* to discharging a firearm and proximately causing great bodily injury and death. Jones has offered no specific theory how, given his admission to the firearm enhancement as part of the guilty plea, he would not be guilty because of the changes made by Senate Bill No. 1437. (See *Mares,* at p. 1168

12

[noting "it is not relevant if [defendant] wished to claim (for instance) that he was misidentified and another person committed the crime," and although "[n]ew evidence of misidentification could support a petition for a writ of habeas corpus, . . . it would not show that he cannot be convicted 'because of' the changes to the law, as required by section 1172.6"].) Jones's argument is that someone else may have been the shooter, but he has offered no specific theory on how he assisted the purported actual killer "in committing some other crime." (See *id*. at p. 1169.)

Relying on *People v. Offley* (2020) 48 Cal.App.5th 588 (*Offley*), Jones asserts his admission to the firearm enhancement under section 12022.53, subdivision (d), did not establish he acted with intent to kill or refute he was convicted under a theory of imputed malice. In *Offley*, the defendant Offley was one of five defendants "charged with taking part in a gang-related shooting," and evidence at trial showed members of a gang "ambushed a vehicle driving through their territory" and at "[a]t least three individuals fired shots into the vehicle." (*Id*. at p. 592.) The jury, which had "received an instruction regarding the natural and probable consequences doctrine in cases of conspiracy," convicted Offley of second degree murder, attempted murder, and shooting at an occupied motor vehicle, and it also found that he "personally and intentionally discharged a firearm, proximately causing great bodily injury and death to the victim" under section 12022.53, subdivision (d). (*Id*. at p. 593.) The trial court found Offley was ineligible for relief under former section 1170.95 because of the jury's finding on the section 12022.53, subdivision (d) enhancement. (*Id*. at p. 594.)

The appellate court in *Offley* reversed, stating "an enhancement under section 12022.53, subdivision (d) does not establish as a matter of law that a defendant acted with malice aforethought." (*Offley, supra*, 48

13

Cal.App.5th at p. 597.)[12] The appellate court noted section 12022.53, subdivision (d) is "a general intent enhancement" and "does not require the prosecution to prove that the defendant harbored a particular mental state as to the victim's injury or death." (*Id.* at p. 598.) The appellate court recognized in many instances "additional information from the record will establish that a defendant's conviction was not based on the natural and probable consequences doctrine," but in that case, the appellate court could not "rule out the possibility that the jury relied on the natural and probable consequences doctrine in convicting Offley." (*Id.* at p. 599.) It further noted the jury could have "concluded that [the victim's] death was the natural and probable consequence of the conspiracy and convicted [Offley] of murder without finding beyond a reasonable doubt that he acted with malice aforethought." (*Ibid.*)

*Offley* is distinguishable. The jury in *Offley* received an instruction regarding natural and probable consequences and multiple people fired gunshots. (*Offley, supra,* 48 Cal.App.5th at pp. 592–593.) Here, however, in addition to Jones admitting to discharging a firearm and proximately causing death to another person, the preliminary hearing transcript indicates only one gunshot was fired. Moreover, Jones has offered no specific theory on how he assisted the purported actual killer in committing an unspecified

---

[12] The *Offley* court also reversed the denial of a different defendant's petition because that defendant's enhancement "was under section 12022.53, subdivision (e)(1) and showed only that a principal to the crime, not [defendant] himself, fired a weapon that caused the victim's death." (*Offley, supra,* 48 Cal.App.5th at p. 597.)

14

target offense for purposes of the natural and probable consequences doctrine.[13]

Finally, Jones asserts that, if we decide a prima facie case has not been established, the matter should be remanded with directions to allow Jones to file an amended petition, similar to what our Supreme Court permitted in *Patton*. Conversely, the Attorney General argues remand is not appropriate here. As in *Patton*, and out of an abundance of caution, we will grant Jones's request to remand the matter to permit him to plead additional facts. We therefore will order a remand to the trial court "with directions for that court to consider an amended petition should [Jones], within 30 days of that remand, seek to file one." (*Patton, supra*, 17 Cal.5th at pp. 569–570; see also *People v. Glass, supra*, 110 Cal.App.5th at p. 930 [conditionally affirming and remanding to permit the petitioner "to plead 'additional facts'"].) "We express no opinion on the viability of any additional facts [Jones] might allege." (*Patton,* at p. 570.)

---

[13] We also note Jones could not have been convicted under the natural and probable consequences doctrine for first degree premeditated murder because, when he pleaded guilty to first degree murder in 2018, that doctrine was no longer a valid basis for first degree premeditated murder. (See *People v. Chiu* (2014) 59 Cal.4th 155, 158–159 ["hold[ing] that an aider and abettor may not be convicted of first degree *premeditated* murder under the natural and probable consequences doctrine"], superseded by statute, as noted in *People v. Hin* (2025) 17 Cal.5th 401, 445; see also *Offley, supra*, 48 Cal.App.5th at p. 595, fn. 3 [recognizing *Chiu* "abrogated the use of the natural and probable consequences doctrine to prove first degree premeditated murder, but it did not change the law regarding its application to second degree murder"].)

## DISPOSITION

We remand the matter to the trial court "with directions for that court to consider an amended petition should [Jones], within 30 days of that remand, seek to file one." (*Patton, supra*, 17 Cal.5th at pp. 569–570.) We otherwise conditionally affirm the order denying Jones's petition under section 1172.6.

GOODING, J.

WE CONCUR:

DELANEY, ACTING P. J.

SCOTT, J.

16